JEFFREY H. WOOD, Acting Assistant Attorney General
SETH M. BARSKY, Section Chief
MEREDITH L. FLAX, Assistant Chief
CLIFFORD E. STEVENS, JR., Trial Attorney (D.C. Bar #463906)
MARY HOLLINGSWORTH, Trial Attorney (AZ Bar # 027080)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 353-7548
Facsimile:  (202) 305-0275
E-mail: clifford.stevens@usdoj.gov

Attorneys for Federal Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>Ryan Zinke et al.,<br><br>    Defendants,<br><br>    and<br><br>National Association of Home Builders, et al.,<br><br>    Intervenors/Defendants. | No. 4:14-cv-02506-RM<br><br>**FEDERAL DEFENDANTS' F.R.C.P. 59(e) MOTION TO ALTER OR AMEND THE COURT'S JUDGMENT** |

Pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 59(e), Defendants[1] hereby move the Court to alter or amend its March 29, 2017 judgment remanding and vacating the joint final policy of the U.S. Fish and Wildlife Service ("FWS") and the National Marine Fisheries Service ("NMFS") (collectively, "the Services") interpreting the Endangered Species Act ("ESA") statutory phrase "significant portion of its range" ("SPR"). 79 Fed. Reg. 37,578 (July 1, 2014) ("Final SPR Policy" or "Policy"). ECF Nos. 72 and 73.

First, Defendants respectfully ask the Court to correct its erroneous interpretation of NMFS' listing decision for the African coelacanth. Defendants provide a declaration from NMFS explaining that, contrary to the Court's characterization, NMFS correctly applied the Final SPR Policy for the coelacanth and found that, while the species did not qualify for listing based on its range-wide status, the species in fact qualified for listing based on its status in a significant portion of its range. The Court relied on its mistaken characterization of the coelacanth decision in concluding that the Policy afforded the SPR language no independent meaning. Order at 13-14. The Court therefore should correct that conclusion and, as necessary, amend its ruling as to the lawfulness of the Policy.

Second, if, after correction of its error regarding the coelacanth decision, the Court nevertheless continues to grant summary judgment to Plaintiffs on their challenge to the Final SPR Policy, Defendants request that the Court clarify that its remedy of vacating the Policy is limited to the District of Arizona and the substantive aspect of the Policy found unlawful by the Court or, alternatively, remand without vacatur. Nationwide vacatur of the Policy would be the kind of "programmatic" relief from the application of agency policies that is unlawful absent specific statutory authorization, which the ESA does not provide. Further, Plaintiffs have not shown standing to support relief extending beyond the pygmy owl decision. And even if "programmatic" relief from the Policy were available under the

---

[1] Secretary Ryan Zinke is substituted for S.M.R. Jewell, former Secretary of the Interior, pursuant to F.R.C.P. 25(d).

law and Plaintiffs had standing to obtain such relief, it is inequitable here because it may well foreclose full judicial development of important questions for the administration of the ESA. Nationwide vacatur would be particularly unwarranted given that the Policy is a joint one of FWS and NMFS, and NMFS is not even a party to this litigation. If, however, the Court does not expressly limit the geographic and substantive scope of its vacatur, remand without vacatur of the Policy would also be a more appropriate remedy. Defendants should be given the opportunity to provide further explanation for the Final SPR Policy on remand, and such explanation may be sufficient to satisfy any further review by this Court. Ninth Circuit law recognizes that remand without vacatur is appropriate in those circumstances.

For all of these reasons and the reasons set forth in the memorandum accompanying this motion, alteration of the Court's judgment is necessary in order to correct manifest errors of law and fact and to prevent manifest injustice.[2]

**FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR F.R.C.P. 59(e) MOTION TO ALTER OR AMEND THE COURT'S JUDGMENT**

The Defendants submit the following memorandum in support of their Motion to Alter or Amend the Court's March 29, 2017 judgment remanding and vacating the joint Final SPR Policy. "In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law."

---

[2] Defendants do not seek reconsideration of the Court's remedy regarding FWS' 12-month finding for the pygmy owl. While remand without vacatur of that decision would be sufficient to provide complete relief to Plaintiffs, vacatur of that decision does not alter the *status quo* because the species is not currently listed.

2

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citation omitted). "A court considering a Rule 59(e) motion is not limited merely to these four situations, however." *Id*. (citation omitted) (noting that under unusual circumstances an amendment outside the listed situations may be appropriate). "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *Id*. (citation omitted).[3] Here, Defendants assert that alteration of the Court's judgment is necessary in order to correct manifest errors of law and fact and to prevent manifest injustice.

## ARGUMENT

### I. The Court Should Correct Its Error Regarding NMFS' Coelacanth Decision

The Court erred in characterizing NMFS' listing decision for the African coelacanth. The Court found that, "rather than showing that accurate application of the Final SPR Policy can result in a finding that a portion of a species' range is significant, the Service's final listing determination regarding the African coelacanth merely indicates that the Service has had difficulty accurately applying the Final SPR Policy." Order at 13. As explained more fully in the attached declaration from Angela Somma of NMFS ("Somma Dec."), the agency that made the determination, the Court is incorrect about NMFS' coelacanth decision.

---

[3] Defendants do not believe that LR 7.2(g) applies here, as set forth in their April 7, 2016 motion for an extension of any LR 7.2(g) deadline applicable to this motion. ECF No. 74 at 1-2 (citing cases of this Court finding that F.R.C.P. 59(e) rather than LR 7.2(g) applies after the Court's judgment). If the Court concludes otherwise, this motion is timely filed under LR 7.2(g), pursuant to the Court's granting of the motion for extension, ECF No. 75, and meets the standards of the Local Rule. In their summary judgment briefing, Defendants could not have briefed adequately the remedy matters first addressed in this motion, given that the proper remedy depends in large part on the Court's merits ruling. Additionally, Defendants could not have foreseen the Court's error as to NMFS' listing determination for the African coelacanth.

In characterizing NMFS' determination, the Court relied solely on an excerpt of the agency's discussion from the *final* listing rule for the coelacanth.  Order at 13.  But as Ms. Somma states, the "proposed and final rules should be read together for a complete understanding of the rationale and basis for our listing decision."  Somma Dec. ¶ 3.  As she explains, in the proposed rule, "NMFS concluded that the Tanzanian population was 'significant' because its hypothetical loss would result in elevating the risk for the remaining members of the species, to the point that the species in the remainder of the range would meet the definition of a '"threatened species."'  *Id*. ¶ 10 (citing 80 Fed. Reg. 11,363 (Mar. 3, 2015)).  This clear application of the Final SPR Policy was expressly set out in the proposed rule:

> The Tanzanian population is one of only three confirmed populations of the African coelacanth, all considered to be small and isolated. Because all three populations are isolated, the loss of one would not directly impact the other remaining populations. However, loss of any one of the three known coelacanth populations would significantly increase the extinction risk of the species as a whole, as only two small populations would remain, making them more vulnerable to catastrophic events such as storms, disease, or temperature anomalies . . . . This reasoning supports our conclusion that the Tanzanian population comprises a significant portion of the range of the species because *this portion's contribution to the viability of the African coelacanth is so important that, without the members in this portion, the African coelacanth would be likely to become in danger of extinction within the foreseeable future, throughout all of its range*.

80 Fed. Reg. at 11,374 (emphasis added).  Thus, NMFS "directly and explicitly applied the test for 'significance' from the final SPR Policy."  Somma Dec. ¶ 10.  In the final rule, NMFS reaffirmed its analysis in the proposed rule and, indeed, expressly stated that the proposed rule contained a more detailed explanation of the determination.  *Id*. ¶ 11 (citing 81 Fed. Reg. 17,398 (Mar. 29, 2016)).  In the portion of the final rule relied upon by the Court, NMFS was "merely paraphrasing [its] overall analysis, as set forth in more detail in the proposed listing rule, not supplanting it."  *Id*. ¶ 12.

4

While perhaps NMFS could have been more explicit as to its complete reasoning in the final rule, there is no reason for this Court not to accept NMFS' own explanation and reaffirmation of the basis for its listing determination, as stated in the proposed rule and reiterated in Ms. Somma's declaration. The Court should correct this error and amend its finding, premised on this error, that there is no set of circumstances in which accurate application of the Policy could result in a species being listed based on its status in a portion of the range. Order at 11, n.9. As NMFS has explained, the African coelacanth is an example of just such a situation that, although not directly presented for review here, is entitled to a presumption of regularity and validity. Further, as noted above, the Court relied on its misinterpretation of the coelacanth decision in concluding that the Policy afforded the SPR language no independent meaning. Order at 13-14. The Court therefore should revise its characterization of the coelacanth decision and, to the extent the Court finds it necessary, amend its ruling as to the lawfulness of the Policy. At a minimum, correction of the Court's error regarding the coelacanth decision is necessary to avoid confusion as to that listing decision, which is not before the Court. Further, a correct presentation of the coelacanth decision highlights that Defendants may well be able to justify the Final SPR Policy on remand, further supporting Defendants' request that the Court limit the scope of any vacatur or remand the Policy without vacatur.

## II. Any Vacatur of the Final SPR Policy Should be Limited to the District of Arizona and the Aspect of the Policy Found Unlawful by the Court

Even if the Court continues to grant summary judgment to Plaintiffs on their challenge to the Final SPR Policy, "programmatic," nationwide vacatur of the Services' Final SPR Policy would not be lawful, is not required to address any injuries of the Plaintiffs cognizable under Article III standing law, and would not be appropriate or equitable here.  While the Administrative Procedure Act ("APA") allows this Court to "set aside" unlawful final agency action, 5 U.S.C. § 706(2), vacatur is not available or

mechanically required in all cases and may be tailored as necessary. *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995); *Sierra Forest Legacy v. Sherman*, 951 F. Supp. 2d 1100, 1105-06 (E.D. Cal. 2013). "Vacatur is clearly a form of equitable relief that the Court may award, withhold, and craft to fit the circumstances of the case before it." *Sierra Forest Legacy*, 951 F. Supp. 2d at 1106 (citing, *inter alia*, *Nat'l Wildlife Fed'n*, 45 F.3d at 1343).

Courts have recognized that nationwide relief is particularly unwarranted in cases such as this one, "where a regulatory challenge involves important or difficult questions of law, which might benefit from development in different factual contexts and in multiple decisions by the various courts of appeals." *Los Angeles Haven Hospice v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011); *see also United States v. Mendoza*, 464 U.S. 154, 160 (1984) ("Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari"); *Hart v. Massanari*, 266 F.3d 1155, 1173 (9th Cir. 2001) (the freedom of courts "to develop different interpretations of the law among the circuits is considered a strength of our system. It allows experimentation with different approaches to the same legal problem, so that when the Supreme Court eventually reviews the issue it has the benefit of 'percolation' within the lower courts").

The unique position of the United States as litigant also sometimes requires it to decline to acquiesce in the national application of a particular court's ruling on a matter. *See Ry. Labor Execs.' Ass'n v. ICC*, 784 F.2d 959, 964 (9th Cir. 1986) ("The Courts do not require an agency of the United States to accept an adverse determination of the agency's statutory construction by any of the Circuit Courts of Appeals as binding on the agency for all similar cases throughout the United States."); Samuel Estreicher & Richard L. Revesz, *Nonacquiescence by Federal Administrative Agencies*, 98 Yale L.J. 679, 735-41 (1989). When practiced outside of the jurisdiction of the court that rendered the adverse decision,

federal agency non-acquiescence is entirely proper because, if an agency must conform its policy nationwide to an adverse ruling by one court, "it becomes exceedingly difficult, if not impossible, for either the agency or a private litigant to bring before another [court] the question whether the agency's original policy was permissible under the statute." *Nonacquiescence by Federal Administrative Agencies* at 737.

In accordance with these principles, this Court should not foreclose other courts from evaluating the Final SPR Policy, which involves questions of major importance for the Services' administration of the ESA. The legality of the Policy has already been litigated in several other district courts, with favorable rulings for the government. *Defs. of Wildlife v. Jewell*, 176 F. Supp. 3d 975, 1007-10 (D. Mont. 2016) (rejecting facial challenge to Final SPR Policy); *Ctr. for Biological Diversity v. Jewell*, No. 15-cv-4, 2016 WL 4592199, at *11 (D. Mont. Sept. 2, 2016) (finding that the Policy "is consistent with the text and purpose of the ESA" and "constitutes a reasonable and permissible reading of an ambiguous statutory phrase," in a case involving the arctic grayling now on appeal). In *WildEarth Guardians v. Jewell*, 134 F. Supp. 3d 1182, 1188-95 (D. Ariz. 2015), this Court also *upheld* one aspect of the Services' SPR analysis, specifically its focus on the current rather than historical range of the species. This Court's judgment as to the Policy, if read to apply nationwide and substantively across-the-board, would call into question the continued validity and effect of these decisions. Even in this case, the Court upheld other aspects of the Final SPR Policy, including that the ESA does not require special consideration for species imperiled in the United States and sets a relatively high threshold for the significance of a portion of the range in order to avoid dilution of conservation efforts and unnecessary restrictions. Order at 14-15. Yet, given the widest reading, the Court's judgment vacated the whole Policy.

There are also multiple other pending district court challenges to the Final SPR Policy or the Services' SPR interpretation as applied to different species. *See*, *e.g.*, *Desert*

*Survivors v. U.S. Dep't of Interior*, -- F. Supp. 3d --, No. 16-cv-01165, 2017 WL 475281 (N.D. Cal. Feb. 6, 2017) (bi-state sage grouse); *Ctr. for Biological Diversity v. FWS*, No. 15-cv-00130 (D. Colo.) (Gunnison sage grouse); *Ctr. for Biological Diversity v. Jewell*, No. 16-cv-001932 (D. Colo.) (Rio Grande cutthroat trout); *Ctr. for Biological Diversity v. Kurth*, No. 15-cv-00477 (D.D.C.); and *Defs. of Wildlife v. Kurth*, No. 16-cv-00910 (D.D.C.) (consolidated cases on the northern long-eared bat). Nationwide vacatur could foreclose these and other courts from independently evaluating the Policy for other species and in other factual contexts. In fact, the day after this Court's decision, a notice was filed in another district arguing that "[n]ow that the SPR policy has been vacated as contrary to the ESA, FWS can no longer rely on the unlawful 2014 SPR policy." *All. for the Wild Rockies v. Zinke*, 9:16-CV-00021, ECF No. 44 at 2 (D. Mont.). At a minimum, the Court's current judgment creates substantial confusion on this point. Expressly limiting vacatur to this District and the specific aspect of the Policy found unlawful by the Court would ensure that other courts may continue to address the validity of the Policy, to the benefit of the ESA.

Notably, the Policy is a *joint* document of both FWS and *NMFS*, the latter of which is not a party to this litigation. NMFS is a defendant in *Center for Biological Diversity v. FWS*, Case No. 15-cv-00130 (Gunnison sage grouse), currently pending in the District of Colorado, and should not be foreclosed from defending the Policy in that case. Application of the Services' SPR interpretation also was an issue in *Natural Res. Def. Council v. Sobeck*, No. 1:15-cv-00198 (D.D.C.), involving a NMFS decision not to list the Blueback herring. While the Court recently issued a summary judgment order in that case relying on factual grounds (and not calling the Policy itself into question), the application of the Services' SPR interpretation may arise again on judicial review of any new NMFS decision for that species on remand. This Court's judgment should not foreclose NMFS from defending the Policy before other courts, especially given the importance of these issues

8

for NMFS' administration of the ESA. Nor should FWS be precluded from defending specific applications of the Policy to other species before other courts.

To allow other courts to address important legal issues, federal courts often expressly limit the scope of their rulings, such as geographically or to the parties before the court. *Kentuckians for the Commonwealth v. Rivenburgh*, 317 F.3d 425, 436 (4th Cir. 2003) (vacating as overbroad an injunction that had "substantial national impact"); *Shvartsman v. Apfel*, 138 F.3d 1196, 1201 (7th Cir. 1998) (limiting class certification to persons in that circuit to avoid freezing the development of the law at the point of the first decision); *Geraghty v. U.S. Parole Comm'n*, 719 F.2d 1199, 1205 (3d Cir. 1983) (upholding decision not to certify a national class so as not to "interfere with the litigation of similar issues in other judicial districts"); *see also North Dakota v. U.S. EPA*, No. 3:15-cv-59, Order Limiting the Scope of Preliminary Injunction to the Plaintiffs, ECF No. 79 (D.N.D. Sept. 4, 2015) (declining to "extend its decision beyond the entities that are actually parties in this litigation" as a matter of equity and "out of respect for the decision making authority" of other courts hearing the same matter); *Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 108, 136 (D.D.C. 2004) (remanding with vacatur a multi-state critical habitat designation, but limiting the scope of remedy "to the areas in North Carolina units at issue in this case"), *aff'd*, -- F.3d -- , No. 15-5199 (Apr. 7, 2017); *U.S. Ass'n of Reptile Keepers v. Jewell*, 103 F. Supp. 3d 133, 166 (D.D.C. 2015) (limiting preliminary injunctive relief to certain geographic areas); *U.S. Ass'n of Reptile Keepers v. Jewell*, 106 F. Supp. 3d 125, 127 (D.D.C. 2015) (further "tailoring the preliminary injunction to the specific harms and equities identified in the pleadings and evidence to date"), *aff'd*, -- F.3d -- , No. 15-5199 (Apr. 7, 2017).

Moreover, nationwide vacatur of the Policy would be the kind of programmatic relief that is not available under the law absent specific statutory authorization. As the Supreme Court held in *Lujan v. National Wildlife Federation*, 497 U.S. 871, 893 (1990),

program-wide agency policies "cannot be laid before the courts for wholesale correction" under the APA, "simply because one [specific application] of them," here the pygmy owl decision, "is ripe for review" and allegedly "adversely affects" the Plaintiffs.  "Except where Congress explicitly provides for [the court's] correction of the administrative process at a higher level of generality, [courts] intervene in the administration of laws only when, *and to the extent that*, a specific 'final agency action' has an actual or immediately threatened effect." *Id.* at 894 (emphasis added).

Many courts, including this one, have read *Lujan* to bar programmatic relief as to an agency's national policies or programs, even where a specific application of the agency policy or program is before the court.  *See Defs. of Wildlife v. Flowers*, No. 02-cv-195, 2003 WL 22143270 (D. Ariz. Aug. 18, 2003), *aff'd* 414 F.3d 1066 (9th Cir. 2005); *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) (finding that a plaintiff cannot seek "wholesale improvement of [a] program by court decree"); *Sierra Club v. Peterson*, 228 F.3d 559, 567-68 (5th Cir. 2000) (ability to challenge some specific sales does not allow programmatic relief); *Nat'l Wildlife Fed'n v. Caldera*, No. 00-cv-1031 , 2002 WL 628649, at *2 (D.D.C. Mar. 26, 2002) (relief beyond specific permits at issue in the case would "run afoul of *Lujan*"); *Ctr. for Biological Diversity v. HUD*, 241 F.R.D. 495, 500-02 (D. Ariz. 2006) (citing *Lujan* to bar programmatic relief even with applications of the agency program before the Court).

The required "case-by-case approach" to judicial review of agency policies or programs may be "frustrating" to organizations such as Plaintiffs that have as their "objective across-the-board protection of our Nation's wildlife," but as the Supreme Court held, that "it is the traditional, and remains the normal, mode of operation of the courts." *Lujan*, 497 U.S. at 894.  Such application-by-application relief "may ultimately have the effect" of requiring a policy or program "to be revised by the agency in order to avoid the unlawful result that the court discerns." *Id.*  And even though that may not be "as swift or

as immediately far-reaching a corrective process as those interested in systematic improvement would desire," it remains that "more sweeping actions are for the other branches." *Id*.

Here, the ESA does not authorize any remedy as to the Services' broader policies. The ESA includes a citizen-suit provision, but it is directed at regulated entities and the Services' failure to perform certain duties in ESA Section 4, not the Services' alleged "maladministration" or "implementation" of the ESA, such as may occur through broader policies. *Bennett v. Spear*, 520 U.S. 154, 172-74 (1997); 16 U.S.C. § 1540(g)(1). By contrast, some statutes provide for review of agency regulations in a particular court and thus authorize nationwide relief. *See*, *e.g.*, 42 U.S.C. § 7607(b)(1) (petition for review of a nationwide regulation under the Clean Air Act must be filed in the District of Columbia Circuit). Congress knows how to provide for review of agency regulations or policies by a single court, and simply elected not to do so in the ESA. Plaintiffs' challenge to the Policy is thus premised on the APA, which precludes the sort of programmatic relief that nationwide vacatur of the Policy represents. *Lujan*, 497 U.S. at 893-94.

Even assuming that such relief were available under the law, Plaintiffs also have fallen far short of showing Article III standing to obtain it. As the Ninth Circuit has held, a "plaintiff must demonstrate standing separately for each form of relief sought." *Los Angeles Haven Hospice*, 638 F.3d at 655 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs*, 528 U.S. 167, 184 (2000)). Limiting any remedy to the injury that forms the basis for standing "insures the framing of relief no broader than required by the precise facts to which the court's ruling would be applied." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221-22 (1974); *see also Los Angeles Haven Hospice*, 638 F.3d at 664 (relief should be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs") (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

In their standing declarations, Plaintiffs allege injury from the Final SPR Policy

going beyond the pygmy owl decision, but those allegations are inadequate under Supreme Court law. To establish standing, the plaintiff first "must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant . . . ." *Id*. "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' *Id*. at 561. An injury is "particularized" if it affects the party asserting standing "in a *personal and individual* way." *Id*. at 560 n.1 (emphasis added).

Plaintiff Center for Biological Diversity ("CBD") submits a declaration from its member and director Noah Greenwald asserting that the Final SPR Policy "undercuts the Center's organizational mission" and "severely weaken[s] the ability of the Center's Endangered Species Program to successfully petition the FWS for the listing and protection of imperiled and at-risk species." ECF 52-1 ¶ 8. But with the exception of the pygmy owl, these allegations are unsupported by specific facts showing concrete and personal harm that is causally connected to the Policy. Mr. Greenwald's declaration only briefly mentions a few other species implicated by the Policy that (as discussed below) are already the subject of litigation in other courts (the Rio Grande cutthroat trout, Arctic grayling, and bi-state sage grouse). *Id*. As an initial matter, it is unclear how this Court could redress any injuries to CBD or its members as to these species. Other courts are exercising jurisdiction in those cases and will provide any appropriate remedy, assuming CBD prevails (for the arctic grayling, CBD lost in district court but has appealed to the Ninth Circuit). In this case, CBD also identifies no member actually or imminently threatened with injury by ESA listing decisions for these species, which is required under Supreme Court precedent. For example, the Supreme Court has found that an individual's mere "someday" intentions to

visit areas affected by an agency decision "without any description of concrete plans, or indeed even any specification of *when* the someday will be – do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564. Here, for these three identified species, CBD does not point to any members with even vague intentions to visit areas occupied by the species, let alone concrete plans. Even if CBD had done so, that still would not show standing to obtain broad nationwide vacatur extending to unnamed other species.

Other than Mr. Greenwald's declaration, Plaintiffs submit declarations from CBD member Sky Jacobs (ECF No. 52-2), Craig Miller of Plaintiff Defenders of Wildlife ("DOW") (ECF No. 52-3), and DOW member Christina McVie (ECF No. 52-4). Mr. Jacobs' and Ms. McVie's declarations only address the pygmy owl and are most useful as illustrations of the kind of standing allegations that Plaintiffs plainly have *not* provided for any other species. Likewise, beyond claiming harm from the pygmy owl decision, Mr. Miller's declaration does not identify any other species that have been the subject of ESA listing decisions that actually or imminently injure DOW or its members. Finally, any injury to Plaintiffs or their members from the pygmy owl decision is not sufficient to support nationwide vacatur of the Final Policy, since the Policy was issued several years after the pygmy owl decision and thus cannot be causally connected to that decision.

In sum, in recognition of Supreme Court precedent barring "programmatic" relief in this context and out of consideration for the principles of sound judicial administration and comity among courts of equal rank, the Court's judgment regarding the Policy should be expressly limited to this District and the aspect of the Policy found unlawful by the Court. Nationwide, total vacatur would be a blunt tool that may foreclose other courts from giving effect to their decisions and independently evaluating the Policy, and is not necessary to address any cognizable injuries of the Plaintiffs. Nor is complete vacatur of the Policy fully consistent with the Court's decision in this case and this Court's prior

decision in *WildEarth Guardians*, 134 F. Supp. 3d 1182, in which this Court upheld other important aspects of the Services' SPR interpretation as reflected in the Policy.

## III.  Remand Without Vacatur Would Also Be Appropriate

Another alternative that avoids the problems of nationwide vacatur is remand without vacatur. "[W]hen equity demands," an agency action "can be left in place while the agency follows the necessary procedures" to address an adverse court ruling. *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405–06 (9th Cir. 1995). Whether an agency action should be remanded without vacatur "depends on how serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed.'" *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (quoting *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)). A court must balance these two equitable factors to evaluate the appropriateness of vacatur. *See id.*; *Shands Jacksonville Med. Ctr. v. Burwell*, 139 F. Supp. 3d 240, 270–71 (D.D.C. 2015) (noting "[t]here is no rule requiring either the proponent or opponent of vacatur to prevail on both factors" and instead "resolution of the question turns on the Court's assessment of the overall equities and practicality of the alternatives").

The Court erred as a matter of law in not applying this test before vacating the Policy.  Further, consideration of these factors establishes that remand without vacatur of the Policy is the most appropriate remedy, assuming any remedy as to the Policy is required.  Vacatur of the Policy, particularly on a nationwide basis, has the potential to affect judicial review of all of the Services' ESA listing decisions since the Policy was issued in July 2014, in which an SPR analysis was performed or allegedly required.  This substantial disruption can be eliminated or at least greatly reduced by remanding the Policy without vacatur.  Doing so would not prevent Plaintiffs here, or any other parties with sufficient standing, from bringing separate challenges to particular listing decisions applying the SPR Policy.

Further, to assess the seriousness of an agency's errors and whether remand without vacatur is appropriate, courts consider whether the agency could reach the same result in a new rule, even though the content of the rule itself would change. *See Black Oak Energy, LLC v. FERC*, 725 F.3d 230, 244 (D.C. Cir. 2013) (refusing to vacate rule because it was "plausible that [the agency] can redress its failure of explanation on remand while reaching the same result"). For example, in *Allied-Signal*, the D.C. Circuit would not vacate a challenged rule when there was "at least a serious possibility that [the agency would] be able to substantiate its decision on remand" through additional explanation in a new rule. 988 F.2d at 151. Here, there is more than a serious possibility that FWS can justify the Policy on any remand. Notwithstanding the centrality of the SPR language in this case, the Court did not actually address when a species should be listed based on its status in a *significant portion of its range*. Rather, the Court rested its decision largely on its own conclusion as to when a species is properly found threatened or endangered *throughout its range*. Specifically, the Court found that whenever a species is threatened or endangered in a portion of its range, and the loss of that portion would cause the species to become threatened or endangered in the remainder of the range, then the species by definition is currently threatened or endangered *throughout its range* – without resort to the SPR language of the ESA and even though the portion of the range in question is not yet lost. Order at 12-13. The Court reached that conclusion without citing any authority and without any discussion of when the Services (or reviewing courts) have found that listing species based on their status throughout their range is appropriate over the 43-year-plus history of the ESA. On remand of the Policy or reconsideration of the pygmy owl decision, FWS may well be able to explain that finding a species is threatened or endangered throughout its range is not always legally possible or appropriate in the circumstances identified by the Court, and thus that the Services' SPR interpretation does not render the SPR language redundant.

Also relevant to the equities is that vacatur of the Policy is unnecessary for Plaintiffs to obtain effective relief with respect to the pygmy owl decision, the only specific application of the Services' SPR interpretation before the Court and the only species for which Plaintiffs have remotely alleged sufficient facts for standing. While it may be appropriate for the Court to vacate and remand the pygmy owl decision for a new listing decision by FWS that addresses the Court's ruling on the Services' SPR interpretation, the equities do not support foreclosing FWS from defending that interpretation in other litigation and as applied to other species, especially before it has an opportunity to further consider the Policy on remand. Nor do the equities call for limiting non-party NMFS' ability to defend challenges to its decisions applying the Policy. Remand without vacatur would be a more appropriate remedy in these circumstances.

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask the Court to alter or amend its judgment as set forth above.

Dated: April 26, 2017                    Respectfully submitted,


                                         JEFFREY H. WOOD
                                         Acting Assistant Attorney Genera
                                         SETH M. BARSKY
                                         Section Chief
                                         MEREDITH L. FLAX
                                         Assistant Section Chief


                                         */s/ Clifford E. Stevens, Jr.*
                                         CLIFFORD E. STEVENS, JR.
                                         Senior Trial Attorney
                                         MARY HOLLINGSWORTH
                                         Trial Attorney
                                         United States Department of Justice
                                         Environment & Natural Resources Division
                                         Wildlife & Marine Resources Section
                                         P.O. Box 7611

16

Washington, DC 20044-7611
Tel: (202) 305-0210
Fax: (202) 305-0275
E-mail: clifford.stevens@usdoj.gov
E-mail: mary.hollingsworth@usdoj.gov


Of Counsel:

PHILIP KLINE
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor, Division of Parks & Wildlife
805 SW Broadway, Suite 600
Portland, OR  97205

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Eric R. Glitzenstein, eglitzenstien@meyerglitz.com
William Stewart Eubanks, II, beubanks@meyerglitz.com

*Attorneys for Plaintiffs*

Norman D. James, njames@fclaw.com
Rhett A. Billingsley, rbilling@fclaw.com

*Attorneys for Interveners/Defendants*

　　　　　　　　　　　　　　　　　　*/s/ Mary Hollingsworth*
　　　　　　　　　　　　　　　　　　Attorney for Federal Defendants