Eric R. Glitzenstein (D.C. Bar No. 358287) (admitted *pro hac vice*)
MEYER GLITZENSTEIN & EUBANKS LLP
4115 Wisconsin Avenue, N.W., Suite 210
Washington, DC 20016
Telephone: (202) 588-5206
Facsimile: (202) 588-5049
eglitzenstein@meyerglitz.com

Attorney for Plaintiffs

IN THE UNITED STATES DISRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, Defenders of Wildlife, | )<br>)<br>) |
| Plaintiffs, | ) No. 4:14-cv-02506-RM |
| v. | ) **PLAINTIFFS' OPPOSITION**<br>) **TO DEFENDANTS' MOTION** |
| Ryan Zinke, et al. | ) **TO ALTER OR AMEND THE**<br>) **JUDGMENT** |
| Defendants. | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO ALTER OR AMEND THE JUDGMENT**

Pursuant to Fed. R. Civ. P. 59(e), Federal Defendants have moved to alter or amend the judgment solely with regard to that aspect of the Court's summary judgment disposition that vacated the Final Policy of the U.S. Fish and Wildlife Service ("FWS") and National Marine Fisheries Service ("NMFS") interpreting the phrase "significant portion of its range" ("SPR"), *see* 79 Fed. Reg. 37,578 (July 1, 2014) ("Final Policy"), as used in the definitions of endangered and threatened species in the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544. As explained below, Defendants' motion should be denied because Defendants have not satisfied the stringent standards for relief under Rule 59(e). Defendants' motion raises a potpourri of arguments that Defendants could have raised in summary judgment briefing and it is well-established that a Rule 59(e) motion is not a vehicle by which a party may help itself to a second bite at the apple in this manner. Further, even if the Court opts to entertain the government's new arguments on the merits,

they are devoid of merit.[1]

## I. FEDERAL DEFENDANTS CANNOT SATISFY THE STRINGENT STANDARDS FOR RULE 59(e) RELIEF BECAUSE DEFENDANTS ARE RAISING ARGUMENTS THAT THEY COULD HAVE MADE, BUT DECLINED TO RAISE, IN SUMMARY JUDGMENT BRIEFING.

Precedent in this Circuit and specifically in this Court makes "abundantly clear" that "'amending a judgment after its entry remains an extraordinary remedy.'" *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp. Inc.*, 282 F.R.D. 216, 220-21 (D. Ariz. 2012) (hereafter "*Teamsters*") (quoting *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). The Court of Appeals has instructed that a Rule 59(e) motion should not be granted "absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 1999) (internal quotation omitted). Of particular relevance here, a Rule 59(e) motion "'*may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.*'" *Teamsters*, 282 F.R.D. at 220-21 (quoting *Marlyn Nutraceuticals*, 571 F.3d at 880) (emphasis added). Indeed, "a party 'rais[ing] arguments or present[ing] evidence for the first time when they could reasonably have been raised earlier in the litigation[] . . . raise[s] the concern that [it] has abused Rule 59(e).'" *Teamsters*, 282 F.R.D. at 220-21 (quoting *Herron*, 634 F.3d at 1112).

The government's motion involves just such an "abuse" of Rule 59(e) because the motion raises a host of new arguments and evidence that Federal Defendants could have

---

[1] Defendants have taken the position that their Rule 59(e) motion is not governed by LR 7.2(g), *see* Def. Mot. at 3 n.3, which applies to "Motions for Reconsideration" and provides, in part, that "[n]o response to a motion for reconsideration . . . may be filed unless ordered by the Court . . . ." LR 7.2(g)(2). In this respect, Plaintiffs agree with Defendants' reading of the Court's precedents and they are therefore filing this opposition to the Rule 59(e) motion within the time generally provided by the Court's rules for responses to motions.

2

raised in summary judgment briefing. Defendants argue that (1) the Court's summary judgment ruling somehow misapprehended NMFS's coelacanth decision and its import for the Final Policy, Def. Mot. at 3-5; (2) the Court should limit its vacatur of the Final Policy in various ways delineated in the government's motion, *id.* at 5-14; and (3) remand of the final policy without vacatur "would also be appropriate." *Id.* at 14-15.

As Plaintiffs will explain, none of these arguments clears the "high hurdle" for granting a Rule 59(e) motion. *Teamsters*, 282 F.R.D. at 220-21 (internal quotation omitted). As a threshold matter, however, the motion cannot satisfy Rule 59(e) standards because *all* of the government's new arguments could have been raised in summary judgment briefing.

First, with respect to NMFS's coalacanth decision, the government's motion hinges on a newly filed declaration from a NMFS employee. *See* ECF No. 76-1, Declaration of Angela Somma. As discussed below, there are compelling legal reasons why this Declaration can have no bearing on the Court's analysis, including that Defendants did not even seek leave of the Court to supplement the Administrative Record with it. In any event, the declaration cannot serve as the basis for Rule 59(e) relief because (even assuming it were otherwise permissible) Defendants have no justification for not proffering it during summary judgment briefing.

The coalacanth finding was addressed at length in Plaintiffs' and Federal Defendants' briefs. *See, e.g.*, ECF No. 56 at 11 (Defendants' opening summary judgment motion); ECF No. 67 at 25-29 (Plaintiffs' summary judgment opposition and reply); ECF No. 69 at 16-17 (Defendants' reply). Accordingly, if Defendants wanted to rely on a post hoc declaration of a NMFS employee to address the meaning and import of the finding, they were required to do so during summary judgment briefing, not in a Rule 59(e) motion that is not a proper vehicle for "present[ing] evidence for the first time" that could "reasonably have been raised" at the summary judgment stage. *Herron*, 634 F.3d at 1112; *cf. Ariz. Civil Liberties Union v. Dunham*, 112 F. Supp. 2d 927, 935 (D. Ariz. 2000) ("As

a general rule, the Court does not consider evidence on a motion for reconsideration if the evidence could have been provided before the decision was rendered initially.").

Likewise, Defendants' various new arguments attacking both the scope of the Court's vacatur of the Final Policy and the Court's decision to vacate at all are improperly tardy. In both their opening summary judgment motion and their reply, Plaintiffs expressly requested vacatur of the Policy, *see* ECF No. 52 at 35; ECF No. 67 at 34, and specifically argued that this is the standard relief when a Court finds agency action to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2); *see* ECF No. 52 at 22 (Plaintiffs' opening summary judgment motion) (explaining that "[i]n resolving Plaintiffs' challenge to the FWS's refusal to list the pygmy-owl *and the Final Policy, the Court must apply the APA standard of review*, under which courts '*shall . . . hold unlawful and set aside* agency action found to be'" arbitrary, capricious, or otherwise not in accordance with law) (emphasis added). In addition, Plaintiffs submitted a "Proposed Order" that specifically provided for vacatur of the Final Policy as well as the pygmy-owl finding. *See* ECF No. 52-5.

Yet although Plaintiffs made crystal-clear what relief they were seeking, and despite the fact that Federal Defendants and their counsel are acutely aware that vacating agency action is the usual remedy when a Court finds agency action to be arbitrary or unlawful, Defendants made *none* of the arguments challenging the vacatur remedy that they now advance in their Rule 59(e) motion. Consequently, Circuit precedent dictates the conclusion that Defendants have waived those arguments. *See, e.g.*, *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) ("A Rule 59(e) motion may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.") (emphasis in original); *Kimble v. Marvel Enterprises, Inc.*, No CV 08-372 TUC DCB, 2010 WL 2232176, at *1 (D. Ariz. June 3,

2010) ("A motion to amend a judgment based on arguments that could have been raised, but were not raised, before judgment was entered may not properly be granted.").[2]

## II. DEFFENDANTS HAVE FALLEN FAR SHORT OF DEMONSTRATING "MANIFEST INJUSTICE" IN THE COURT'S SUMMARY JUDGMENT DISPOSITION.

Although Defendants' failure to raise at an earlier stage of the litigation the arguments on which they now rely is a more than sufficient basis for denying their motion, even if Defendants could surmount that barrier, their motion is meritless. Defendants contend that "alteration of the Court's judgment is necessary in order to correct manifest errors of law and fact and to prevent manifest injustice." Def. Mot. at 3. Yet none of their arguments remotely supports that proposition.

### A. There Is No "Manifest Injustice" In The Court's Reading Of The Coalacanth Finding.

In finding that the Final Policy could not be harmonized with the plain language and purpose of the ESA, or with the Ninth Circuit's construction of the Act, the Court relied on the straightforward proposition that "[i]f a portion of a species' range is so vital that its loss would render the entire species endangered or threatened, and the species is endangered or threatened in that portion, then the entire species is necessarily endangered or threatened." 2/29/17 Ruling at 12 (ECF No. 72). Consequently, the SPR definition set forth in the Final Policy affords little or no "independent meaning" to the statutory language, in contravention of elementary rules of statutory construction and the Ninth Circuit's application of them to this very issue. *Id*. at 12-13.

---

[2] Defendants' assertion that they "could not have adequately briefed the remedy matters first addressed in this motion, given that the proper remedy depends in large part on the Court's merits ruling," Def. Mot. at 3, is baseless. Nothing precluded Defendants from addressing what remedy they believed to be "proper" *in the event that* the Court sustained Plaintiffs' position on the merits. Moreover, Defendants did not even request in their summary judgment papers that the Court provide for further briefing on the remedy issue should the Court side with Plaintiffs on the merits.

5

Rather than take issue with the central reasoning in the Court's ruling, Defendants quibble with the Court's characterization of the example that Defendants proffered purporting to demonstrate that the definition in the Final Policy somehow affords the SPR language meaning separate and apart from the basis for listing a species in light of its status in "all" of its range. In doing so, Defendants rely on a new extra-record declaration from a NMFS employee who contends that the Court's analysis mistakenly focused on what NMFS said in the *final* listing rule for the coelacanth rather than what the agency purportedly said in its *proposed* rule. Def. Mot. at 4; Somma Decl. at ¶¶ 8-10.

This line of argument is both procedurally and substantively flawed on multiple levels. To begin with, even aside from the fact that the argument is dependent on an agency Declaration that Defendants could have endeavored to rely on during summary judgment briefing, reliance on an extra-record declaration – and without even seeking leave of the Court to do so – violates fundamental principles of administrative law. As this Court has previously recognized, review of agency action under the APA is ordinarily confined to the administrative record that the agency certifies was before it when the decision at issue was made. ECF No. 46 at 2. Accordingly, a court's consideration of "post hoc" justifications set forth in agency declarations is highly "disfavored." *Gifford Pinchot Task Force v. U.S. Fish and Wildlife Service*, 378 F.3d 1059, 1072 (9th Cir. 2004) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971)).

Here, however, Defendants have not even begun to explain how, consistent with these precepts, the Court can take into consideration the Somma Declaration – which is not only post hoc to the SPR and all summary judgment briefing, but also to the coelacanth finding on which Defendants have relied. And it would be especially incongruous for the Court to afford any consideration to this belated, extra-record submission where, as here,

the FWS has withheld on "deliberative process" and other grounds many hundreds of documents that *were before the FWS* when it adopted the Final Policy. *See* ECF No. 46.[3]

Moreover, even if the Court were to disregard these administrative law principles and consider the post hoc declaration, it should have no bearing on the Court's analysis. Remarkably, the declaration, as well as Defendants' motion, urges the Court to violate yet another basic axiom of administrative law: that "federal courts ordinarily are empowered to review only an agency's *final* action" rather than "preliminary determination[s]" that may be at variance from that action and the agency's ultimate justification for it. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 659 (2007) (emphasis added). Here, as the Court held, insofar as the final coelacanth listing addresses the SPR issue, it does *not* invoke the definition set forth in the Final Policy but, rather, applies a "different" (and arguably more relaxed) standard, Ruling at 14, i.e., whether the loss of one of the populations "would significantly increase the extinction risk of the species as a whole . . . ." 81 Fed. Reg. 17,938, 17,401 (Mar. 29, 2016). What the agency purportedly *meant* to say, as set forth in a post hoc declaration opining on a *proposed* rule, is of no legal import whatsoever.[4]

Finally, even if there were any validity to Defendants' post hoc characterization of the coelacanth listing – and there is none – that would not in any way undermine the underlying reasoning in the Court's ruling. The unavoidable reality remains that the Final

---

[3] The government's concession that "perhaps NMFS could have been more explicit as to its complete reasoning in the final rule," Def. Mot. at 5, does not give it carte blanche to expand on that reasoning in an impermissible post hoc declaration. Indeed, under these circumstances, where Defendants did not even move to supplement the record with the declaration, let alone endeavor to explain on what legal basis the Court could take it into consideration, it would be appropriate for the Court to strike this improper filing.

[4] As the Court noted, NMFS's ultimate listing decision was based on NMFS's finding that the Tanzanian population qualified as a Distinct Population Segment, and *not* on the basis of its status in an SPR (which would have resulted in a rangewide listing). *See* Ruling at 13. Consequently, even NMFS's discussion of the SPR issue in the final rule is, in effect, "dictum" that had "no bearing on the final agency action." *Nat'l Ass'n of Home Builders*, 551 U.S. at 659; *see also* ECF No. 67 at 27.

Policy renders – and, as the Court has held, was intentionally *designed* to render – the SPR language "insignificant, if not wholly superfluous." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001); *see also* Ruling at 13 (explaining that "it appears that the Service's goal in creating the Final SPR Policy was to give as little substantive effect as possible to the SPR language of the ESA"). Not surprisingly, therefore, Defendants *still* cannot point to even a single species that has in fact been listed based on its status in an SPR pursuant to the Final Policy. The Court's merits ruling is correct and, in any event, Defendants have fallen far short of demonstrating that the "extraordinary remedy" of Rule 59(e) relief is warranted. *Teamsters,* 282 F.R.D. at 220-21.[5]

### B. There is Also No "Manifest Injustice" In The Court's Vacatur Of The Unlawful Final Policy.

Defendants proffer a bevy of belated complaints about the Court's vacatur of the Final Policy. Even if these arguments had been timely raised, they are meritless and they certainly do not demonstrate any "manifest injustice" in the Court's remedy. As a threshold matter, Defendants' assertion that vacatur of the Final Policy "would not be lawful" simply misstates the law. Def. Mot. at 5. Indeed, in the very next sentence, Defendants concede that the APA "allows this Court to 'set aside' unlawful agency action," *id*. (quoting 5 U.S.C. § 706(2)) – which is precisely what the Court did in vacating a Final Policy that the Court found to violate the plain language of the ESA and controlling Circuit precedent construing it. In fact, the APA does not merely "allow" the setting aside of unlawful agency action, it *directs* that reviewing courts "*shall set aside*" agency action found to be "arbitrary, capricious, an abuse of discretion, *or not in accordance with law*." 5 U.S.C. §

---

[5] As Plaintiffs also argued in summary judgment briefing, the situation facing the coelacanth actually highlights the importance of affording the SPR language independent meaning and the extent to which the Final Policy fails to do so. Under the Ninth Circuit's reasoning, if one of three small populations of a species is at grave risk of extirpation, and the survival of that population is essential to the species as a whole, then the species is plainly endangered or threatened in "all" of its range. *See* ECF No. 67 at 27-28.

706(2) (emphases added). Accordingly, Defendants' assertion that the APA somehow "precludes" the Court from vacating the unlawful Final Policy, Def. Mot. at 11, has it backwards.

Indeed, in view of the APA's mandatory language, it is well-established that vacatur is, at the very least, the *presumptive* remedy where, as here, a court has found agency action to be in conflict with the law. As the Supreme Court has instructed, "[t]he [APA] requires federal courts to set aside federal agency action that is 'not in accordance with law,' which means, of course *any* law . . . ." *FCC v. Nextwave Personal Commc'ns*, 537 U.S. 293, 300 (2003) (emphasis added); *see also Federal Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998) ("[i]f a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case."); *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 331 (1976) ("if the decision of the agency 'is not sustainable on the administrative record made, then the . . . decision must be vacated'") (citation omitted).

Consequently, the Ninth Circuit has held that "[u]nder the APA, *the normal remedy for an unlawful agency action is to set aside the action. In other words, a court should vacate the agency's action* and remand to the agency to act in compliance with its statutory obligations." *Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 486 F.3d 638, 654 (9th Cir. 2007) (emphasis added), *rev'd on other grounds sub nom. Couer Alaska v. Se. Alaska Conserv. Council*, 557 U.S. 261 (2009); *see also Pollinator Stewardship Council v. U.S. E.P.A.*, 806 F.3d 520, 532 (9th Cir. 2015) ("We order remand without vacatur only in 'limited circumstances'") (citation omitted).

Defendants' belated attacks on the Court's remedy in no way demonstrate that this is one of the "rare circumstances" in which the Court should leave an unlawful agency action in place. *Humane Soc. of U.S. v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010). "The Ninth Circuit has only found remand without vacatur warranted by equity concerns in limited circumstances, namely" where "*serious irreparable environmental injury*"

9

would ensue if the Court vacated the agency action under review. *Ctr. for Food Safety v. Vilsack*, 734 F. Supp. 2d 948, 951, 954 (N.D. Cal. 2010) (setting aside a USDA rule deregulating genetically engineered sugar beets). Obviously, that situation does not exist in this case, in which the Court has held that the Final Policy *fails* to adequately safeguard imperiled species that Congress intended the ESA to protect.

Far from establishing any "manifest injustice" in the Court's imposition of the "standard remedy" for an agency action that flouts federal law, *Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin.*, 109 F. Supp. 3d 1238, 1241-42 (N.D. Cal. 2015), Defendants' objections misstate the applicable legal precedents and paint a distorted picture of how the Court's ruling relates to other cases raising SPR issues.

**First**, Defendants are way off-base in asserting that this Court has somehow fashioned "programmatic relief" that falls afoul of the Supreme Court's ruling in *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 893 (1990), and related cases. *See* Def. Mot. at 10. The fundamental problem in *Lujan* was that the plaintiffs challenged a "so-called land withdrawal program," which was "not an 'agency action' within the meaning of § 702, much less a 'final agency action' within the meaning of § 704" of the APA. *Id*. at 890. In contrast, the Final Policy indisputably *is* a "final agency action" that was published in the Federal Register following public notice and comment proceedings.

Indeed, during summary judgment briefing, Defendants not only failed to advance any argument that the Final Policy is unreviewable under the APA, but they took precisely the opposite tack by contending that the Policy was a formal "rule[] carrying the force of law" to which the Court should defer. ECF No. 57 at 13; *see also* 79 Fed. Reg. 37,578, 37,608 (July 1, 2014) (Final Policy) (explaining that, in promulgating the policy, the Services "have purposefully used the processes required for APA rules" and that the Services are "*effectively treating the policy as an APA rulemaking*") (emphasis added). Now that the Court has declared the Final Policy to be in conflict with the ESA based on the definition of SPR set forth in the Policy, nothing in *Lujan* or any other precedent

prevents the Court from setting it aside, as the APA expressly provides when a court confronts final agency action that is "not in accordance with law." 5 U.S.C. § 706(2).[6] Indeed, in accordance with the APA, courts in this and other Circuits routinely vacate regulations and other final agency actions of broad scope when they are deemed to be in violation of the law.[7]

**Second**, equally meritless is Defendants' seemingly recent epiphany that Plaintiffs lack standing to obtain vacatur of the Final Policy – relief Plaintiffs have sought from the outset of this case. Def. Mot. at 12. Along with their opening summary judgment motion, Plaintiffs submitted four detailed *uncontested* standing Declarations, which are more than sufficient to establish standing both with respect to Plaintiffs' challenge to Defendants' application of their unlawful definition of SPR to the pygmy owl and to the Final Policy itself which, as held by the Court, "suffers from the same fundamental defect" as the pygmy owl finding. Ruling at 16; *see also* ECF Nos. 52-1, 52-2, 52-3, 52-4. In light of these Declarations, the Court correctly held that "Plaintiffs are conservation membership organizations with recreational, aesthetic, scientific, and organizational interests adversely

---

[6] As in *Lujan* itself, the other cases relied on by Defendants involved situations that did *not* involve a discrete agency action such as a published rule or policy. *See, e.g.*, *Defs. of Wildlife v. Flowers*, No. 02-cv-195, 2003 WL 22143270, at *1 (D. Ariz. Aug. 18, 2003) (holding that the plaintiffs' challenge to "what they claim is the Corps' pattern, practice, and policy" did not challenge a discrete "final agency action" for purposes of APA review).

[7] *See, e.g., Pollinator Stewardship Council*, 806 F.3d at 532-33 ("we vacate the EPA's unconditional registration of sulfoxaflor and remand for the EPA to obtain further studies and data regarding the effects of sulfoxaflor on bees"); *California ex rel. Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999, 1021 (9th Cir. 2009) (affirming vacatur of rule establishing management requirements for roadless areas within the National Forest System); *North Carolina v. EPA,* 531 F.3d 896, 900 (D.C. Cir. 2008) (concluding that the EPA's rule requiring reductions in emissions of sulfur dioxide and nitrogen oxide in 28 eastern states "must" be vacated in view of "fundamental flaws" in the rule); *Riverkeeper, Inc. v. Rowlette*, 714 F.3d 402 (6th Cir. 2013) (vacating as arbitrary and capricious the Corps of Engineers' nationwide coal-mining waste discharge permit); *Shearwater v. Ashe*, No. 14-CV-02830-LHK, 2015 WL 4747881, at *26 (N.D. Cal. Aug. 11, 2015) (vacating nationwide rule issued by the FWS extending the duration of eagle take permits to 30 years); *Ctr. for Food Safety*, 734 F. Supp. 2d at 951 (setting aside a USDA rule deregulating genetically engineered sugar beets); *Chiang v. Kempthorne*, 503 F. Supp. 2d 343 (D.D.C. 2007) (vacating nationwide oil production royalty guidelines issued by the Department of the Interior's Mineral Management Service).

affected by the agency actions under review." Ruling at 1 n.1 (also noting that "Defendants do not challenge Plaintiffs' standing").

Plaintiffs' standing Declarations explain that the Services' unlawful SPR definition is harming the concrete interests of members of Plaintiffs Center for Biological Diversity and Defenders of Wildlife in the pygmy owl as well as other species. *See* ECF No. 52-1 at ¶¶ 8-10; ECF No. 52-2 at ¶ 12; ECF No. 52-3 at ¶ 7; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("Of course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purposes of standing."). In addition, the Declarations set forth distinct *organizational* injuries that the Final Policy inflicts on the Plaintiff conservation organizations, by directly impeding their ability to carry out their core missions to protect endangered and threatened species around the country and by diverting scarce organizational resources from other crucial conservation tasks. *See* ECF No. 52-1 at ¶¶ 8-10; ECF No. 52-3 at ¶¶ 7-9.

Under Supreme Court and Circuit precedents this organizational injury affords an independent basis for standing to obtain the standard APA relief of vacatur of the Final Policy. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (an equal employment housing organization had standing to challenge discriminatory housing practices because the organization alleged that the practices "perceptibly impaired [the organization's] ability to provide counseling and referral services" for low income home seekers); *Smith v. Pac. Properties & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) (holding that under *Havens* an organization may satisfy Article III requirements of injury in fact if it can demonstrate that an unlawful act frustrates its core organizational mission and requires "diversion of its resources to combat" the unlawful conduct).

Accordingly, while an organization does not have standing merely by "incurring litigation costs or simply choosing to spend money fixing a problem that would otherwise not affect the organization at all," the organization *does* have Article III standing when a government policy impedes the organization's ability to carry out its core mission and

diverts resources that otherwise would have been spent on other ways of carrying out that mission. *Valle del Sol. Inc. v. Whiting*, 732 F.3d 1006, 1018-19 (9th Cir. 2013). That is exactly the situation here, as Plaintiffs' Declarations establish and as Defendants ignore even in their belated standing challenge. *Cf. Middleton v. Guaranteed Rate, Inc.*, No. 16-15151, 2017 WL 1089553, at *1 (9th Cir. Mar. 23, 2017) ("arguments not raised by a party in its opening brief are deemed waived") (citation omitted).[8]

**Third**, Defendants' argument that the Court should refrain from vacating the Final Policy because the "legality of the Policy has already been litigated in several other district courts, with favorable rulings for the government," Def. Mot. at 7, is misleading at best. *None* of the cases cited by the government addressed the overriding issue resolved in this case: whether the definition of SPR set forth in the Final Policy (and applied with minor variation to the pygmy owl) eviscerates the SPR language in contravention of elementary statutory construction principles and the Ninth Circuit's instruction that the SPR language must be afforded real meaning. To the contrary, *all* of the cases cited by the government as reflecting "favorable" rulings involve an issue that was not litigated in this case, i.e., the extent to which the Service's listing analysis should "focus on the current rather than historical range of the species." *Id*. Hence, there is no conflict whatsoever between the Court's ruling here and the other decisions to which the government points, and thus no reason why this Court should refrain from vacating the Final Policy based on the unlawful SPR definition, consistent with the plain terms of the APA and controlling precedent.

---

[8] Even if the *only* concrete interest Plaintiffs had proffered pertained solely to the pygmy owl – which is hardly the case – Defendants' *concession* that Plaintiffs have standing as to *that* species would be sufficient to entitle Plaintiffs to obtain relief regarding the unlawful definition of SPR in the Final Policy. *See, e.g.*, *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1273 (D. Colo. 2010) (holding that a plaintiff challenging the FWS's prior approach to the SPR issue, as applied to the Preble's meadow jumping mouse, could pursue relief as to the overall policy because "such 'as applied' challenges are the appropriate means by which a party may challenge a broad agency policy document") (citing *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726 (1998); *Ark Initiative v. Tidwell*, 64 F. Supp. 2d 81, 96 (D.D.C. 2014), *aff'd*, 816 F.3d 119 (D.C. Cir. 2016) ("Plaintiffs' challenge to the Egress-Trail Project . . . provides the avenue through which they may attack the Colorado Roadless Rule as well.").

## CONCLUSION

For the foregoing reasons, Defendants have not satisfied the stringent standards for the granting of relief under Rule 59(e). Accordingly, their motion should be denied.

Respectfully submitted,

*/s/Eric R. Glitzenstein*
Eric R. Glitzenstein
(D.C. Bar No. 358287) (admitted *pro hac vice*)

MEYER GLITZENSTEIN & EUBANKS LLP
4115 Wisconsin Avenue, N.W., Suite 210
Washington, DC 20016
Telephone: (202) 588-5206
Facsimile: (202) 588-5049
eglitzenstein@meyerglitz.com

Counsel for Plaintiffs